HALL, *Adm'r*, *v.* WIGGIN & *a.*

A provision in a will that the "estate shall descend and be distributed among nearest relations as follows," naming brothers and sisters and a sister-in-law, with the amount for each, shows that the testator regarded the sister-in-law as among his nearest relations; and a subsequent clause in the will, providing that the balance of the estate shall be equally divided among the nearest relations, entitles her to share in the division.

Specific bequests of definite sums to legatees named vest at the death of the testator, although not made payable till the death or remarriage of the testator's widow.

A bequest of the surplus remaining after the death or remarriage of the testator's widow, to be equally divided among his "nearest relations, or the heirs of their bodies, as then be living," does not vest till the death or remarriage of the widow.

BILL IN EQUITY, asking for instructions. Hosea Clark died December 31, 1869, leaving a will dated March 27, 1861, and codicil thereto dated October 23, 1869, which were duly proved and allowed.    By this will and codicil, after making sundry bequests, the testator gave "the use and improvement of the rest and residue" of his estate to his wife, "to have and to hold and enjoy the same for and during her natural life, or until she shall marry again." He further provided that "at the decease" or marriage of his wife his "estate shall descend and be distributed among nearest relations as follows, to wit:—" To his brother, Nelson Clark, five hundred dollars; to his brother, Horace Clark, fifteen hundred dollars; to his sister, Harriet Clark, three hundred dollars; to his sister, Mary Witt, two hundred dollars; to his sister, Rhuhama Wiggin, one hundred dollars; to his half-sister, Trephana Carruth, fifty dollars; to his half-brother, George Clark, one dollar; to his sister-in-law, Olive P. Rollins, two hundred dollars. His will then contains the following clause: "And my will further is, and I hereby direct, that, at the decease of my said wife, or if she shall marry again after my death, and my estate shall amount to more than the legacies I have herein given,

the surplus shall be equally divided among my nearest relations, or the heirs of their bodies, as then be living, share and share alike."

The wife survived the testator, and died in January, 1891, without marrying again. All of the legacies above named have been paid except one half of the fifteen hundred dollar legacy given to Horace Clark; and there is now more than fifteen thousand dollars "surplus" in the plaintiff's hands for distribution under the last clause of the will. Nelson Clark, Horace Clark, Harriet Clark, Mary Witt, Rhuhama Wiggin, and Trephana Carruth all survived the testator, but died before the death of his widow. All but one (Harriet Clark) left children, who are now living and are defendants in this action. Horace Clark left two children surviving him, Cordelia Clark (one of the defendants) and William H. Clark. William H. died January 14, 1890, leaving a widow, Lucinda E. Clark (one of the defendants), and no children surviving him. The testator had two sisters, Fannie Stimpson and Eliza Rogers, who died before the date of his will (March 27, 1861), and each left children who are defendants. George Clark, the half-brother, died after the making of the will and before the death of the testator. He left children who are now living.

The plaintiff asks the direction of the court.

*Joshua G. Hall*, for the plaintiff.

*John Kivel, Beacham, Foote & Wiggin*, and *Charles Brimblecorn, Oscar A. Marden, J. B. Goodrich, James W. Rollins, H. M. Burleigh*, and *John L. Rice* (of Massachusetts), for the defendants.

CLARK, J. The parts of the will submitted for interpretation are the clauses providing for the distribution of the estate at the termination of the interest of the testator's wife. After sundry bequests, the testator gives "the use and improvement of the rest and residue" of his estate to his wife "during her natural life, or until she shall marry again," and provides that at the decease or marriage of his wife his "estate shall descend and be distributed among nearest relations as follows, to wit:—" To his brother, Nelson Clark, $500; to his brother, Horace Clark, $1,500; to his sister, Harriet Clark, $300; to his sister, Mary Witt, $200; to his sister, Rhuhama Wiggin, $100; to his half-sister, Trephana Carruth, $50; to his half-brother, George Clark, $1; and to his sister-in-law, Olive P. Rollins, $200; and if the estate shall amount to more than the legacies given, "the surplus shall be equally divided among my nearest relations, or the heirs of their bodies, as then be living, share and share alike." The language of the will is neither obscure nor ambiguous. The testator's intention is plainly expressed, that his estate, subject to the interest given to his wife, should be divided among his nearest relations,

whom he named, in legacies of specified amounts, and any surplus
remaining at the decease or marriage of his wife should then be
divided equally among the nearest relations named then living,
and the issues of any who had deceased.　There is nothing indi-
cating that the testator used the words "nearest relations," in the
clause disposing of the surplus, as embracing different persons
from those named by him as nearest relations in the preceding
clause, in making the bequests.　The persons there intended by
the words "nearest relations" are specifically named.　Having
designated who were his nearest relations, it is not to be assumed
that the testator used the phrase with a different intention in the
next clause of the will.　Where the language of a will is plain
and unambiguous, no intention on the part of the testator is to be
sought after other than the one expressed.　*Greenough* v. *Cass*,
64 N. H. 326.　It is certain that the testator included his sister-
in-law, Olive P. Rollins, a relative by marriage, as one of his
nearest relations, and a construction of the clause disposing of the
surplus that would exclude her from a share of it would defeat
the intention of the testator.　His intention as expressed in the
will was, that his estate remaining at the decease or marriage of
his wife should be distributed among his two brothers, three sis-
ters, half-brother, half-sister, and sister-in-law, named as his near-
est relations, by payment of the legacies specified, and a division
of the surplus in equal shares among the surviving legatees and
the heirs of the bodies—meaning children or lineal descendants—
of such as were dead, the lineal descendants of deceased legatees
taking the share of the surplus which the deceased legatees would
receive if living.

A will is to be construed as speaking and taking effect from
the death of the testator, unless a contrary intention appears.　It
was the testator's intention that his property, excepting a portion
otherwise disposed of, should be distributed among the legatees
named, subject to the right of his wife to the use of it during her
life or widowhood, and the specific legacies vested immediately on
the death of the testator.　There was no uncertainty as to their
right of enjoyment of the bequests.　It was postponed until the
happening of an event certain to occur,—the death or marriage of
the testator's wife; and their interest was a vested estate, to which
their representatives were entitled at their decease.　*Crosby* v.
*Crosby*, 64 N. H. 77; *Kennard* v. *Kennard*, 63 N. H. 303; *Brown*
v. *Brown*, 44 N. H. 281.　The children of George Clark, who died
after the making of the will and before the testator, are entitled to
the estate bequeathed to their father. *Goodwin* v. *Colby*, 64 N. H.
401; Gen. Stats., *c.* 174, *s.* 12.

The will provides for the distribution of the surplus, at the
death or marriage of the testator's widow, among the "nearest
relations, or the heirs of their bodies, as then be living."　The
words "then be living" refer to the time when distribution is to

be made, and limit it to the surviving issue of deceased nearest relations. *O'Brien* v. *O'Leary*, 64 N. H. 332. Consequently the surplus is to be divided among the surviving nearest relations named, and the issue of those deceased who survived the testator's widow, the children of those deceased taking by substitution the place of their parents.

The specific bequests, being gifts of definite sums to legatees named, vested on the death of the testator. The interest in the surplus was contingent, as the distribution was to be made, at the decease or marriage of the testator's widow, among the nearest relations named then living, and the heirs of the bodies, or lineal descendants, of deceased nearest relations. These only were to share in the distribution of the surplus. The nearest relations who died before the testator's widow took nothing in the surplus, but their children or grandchildren, if any, take the share they would have been entitled to if they had survived the testator's widow. If all the legatees had survived, the surplus would be divided into eight equal shares; and if the deceased legatees all have surviving children or grandchildren, the same division is to be made,—the children or grandchildren taking *per stirpes*. If one of the deceased nearest relations left no lineal descendants, the division will be into seven shares, the death of a nearest relation without surviving children or grandchildren reducing by one the number of shares in the division and distribution of the surplus.

As William H. Clark, the son of Horace Clark, did not survive the testator's wife, his widow is not entitled to any share in the surplus of the testator's estate; but inasmuch as the legacy of $1,500 to Horace Clark without limitation vested at the death of the testator, his interest in the legacy passed by his will to his son and daughter, and his son's widow, Lucinda E. Clark, is entitled to her distributive share of her husband's interest in the legacy, as of other personal property of her husband.

There is nothing in the will indicating an intention that the issue of Fannie Stimpson and Eliza Rogers, sisters of the testator, who died before the making of the will, should share in the distribution of the estate.

No question of collateral representation is presented upon the facts in the case.

*Case discharged.*

CHASE, J., did not sit: the others concurred.